HUSTIS v. HERBERT.

(Circuit Court of Appeals, First Circuit. April 5, 1919.)

No. 1364.

1. MASTER AND SERVANT ⚎278(18)—RAILROADS—PREMATURE STARTING OF TRAIN—NEGLIGENCE.

In action for death of employé at a station, evidence *held* insufficient to sustain finding that railroad was negligent in starting the train, although there was a bag on a truck to be loaded on the express car.

2. MASTER AND SERVANT ⚎240(1)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

A station employé of a railroad, who lost his footing and fell under the cars, was guilty of negligence in attempting to throw a bag of poultry in the open door of a baggage car traveling at the rate of 7 or 8 miles an hour.

In Error to the District Court of the United States for the District of New Hampshire; Edgar Aldrich, Judge.

Action by H. W. Herbert, as administrator of the goods and estate of John R. Little, against James H. Hustis, as receiver of the Boston & Maine Railroad. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Austin M. Pinkham, of Boston, Mass., for plaintiff in error.

Alexander Murchie, of Concord, N. H. (Hollis & Murchie, of Concord, N. H., on the brief), for defendant in error.

Before BINGHAM and JOHNSON, Circuit Judges, and MORTON, District Judge.

JOHNSON, Circuit Judge. This is a writ of error from a judgment of the District Court of the United States for the District of New Hampshire, in favor of H. W. Herbert, as administrator of the goods and estate of John R. Little, against James H. Hustis, as receiver of the Boston & Maine Railroad.

Little, the deceased, was so severely injured on July 28, 1917, at the station of the railroad company at the village of Pike in the state of New Hampshire, that he died in consequence of his injuries. There was no question about the nature of his employment, although there was some doubt whether he was employed by the railroad company or by the American Express Company. He was employed to do regular station work, including handling baggage, freight, and express, and was paid both by the railroad and by the express company.

The station agent of the railroad company at this station was E. Bertram Pike, who was also employed as agent of the express company. The work at the station was done by a Mr. Aldrich and the deceased, who were paid by Mr. Pike from the revenue of his office. In addition to his duties in handling express, baggage, and freight, the deceased also acted as a telegraph operator for the railroad at the station.

In the view that we have taken of the case it is immaterial whether Little was employed by the railroad company or by the express company.

There was very little work to be done at the station except during the summer months, and on the day when he received his injuries, which was Sunday, he and Aldrich were present at the station awaiting the arrival of the paper train, which arrived about 9:10 a. m. There was a trunk and a bag of poultry upon a truck on the platform in front of the station. The trunk was to be placed in the baggage car and the poultry in the express car. The paper train was made up of an engine, mail car, express car, baggage car, smoker, and one coach, in the order named. Upon the arrival of the train Aldrich pushed the truck up to the rear door of the baggage car, while Little went to the forward door of the express car to receive the express which was to be unloaded at the station. Aldrich got upon the truck and put the trunk into the baggage car, and after he had done this he jumped from the truck and started to draw it up toward the express car. The forward express car door was about 60 or 70 feet from the rear door of the baggage car, into which Aldrich had put the trunk. As Aldrich started forward with the truck on which was the bag of poultry, weighing about 70 pounds, he shouted to Little that he had a bag of poultry to go, and the latter came toward the truck and seized the bag. Aldrich was not certain whether the train had started before Little seized the bag or not; but about that time the train did start, and Aldrich took hold of the bag with Little, and both started toward the open door of the express car, but, finding they could not reach it, the express man told them to put the bag into the rear door of the express car. This they were unable to do, as that door was closed. They then waited for the baggage car to come along. The train was moving upon a down grade and rapidly gained headway, so that its speed was at the rate of 7 or 8 miles an hour when the rear door of the baggage car was opposite them. They then attempted to throw the bag of poultry into this door, but in some way Little lost his footing and fell under the cars and was run over, receiving injuries resulting in his death. Aldrich was unable to testify just how the accident happened; whether Little was thrown up against the car as they attempted to throw the bag into the baggage car, or whether he slipped and fell. No testimony was offered by the railroad company, and at the close of all the testimony the defendant moved that the court direct the jury to return a verdict in its favor, which was denied, and this is assigned as error.

We have carefully examined the testimony, fully realizing that, if there was any evidence or inference which might reasonably be drawn from it to sustain the verdict of the jury, it must be allowed to stand.

The plaintiff in his writ alleged that the defendant—

"carelessly and negligently started its train and baggage and express cars without notice or warning to said plaintiff's intestate before he had finished transferring express from said truck to said express car, thus making it necessary for said plaintiff's intestate to finish loading said car while said train was moving."

256 F.—52

There was no testimony to sustain this allegation; but, on the contrary, it was undisputed that the deceased, Little, had taken from the forward door of the express car all the express that was to be delivered at that station; that he had no truck with him at the express door and no express upon the platform to put aboard the express car; that he had finished his work at the express door, and Aldrich had taken the trunk from the truck at the rear door of the baggage car and placed it in that car, and then had started with the truck, with the bag of poultry upon it, toward the express car, and notified the deceased that the bag was to go by express. At about this time the train started. There was no evidence that a signal was given by anybody for its starting, nor any evidence that those in charge of the train had been notified that the bag of poultry was to go by express.

[1] The fact that the bag was upon the truck in front of the station when the train pulled in would not necessarily impart any information or authorize any inference that it was to be put aboard the express car; as it was on the truck with the trunk, which was rolled forward to the baggage car, it might well have been assumed that both the trunk and the bag were baggage; and we do not think that any reasonable inference could be drawn by the jury from the situation that those in charge of the operation of the train knew or had any reasonable ground to believe that the bag was to be loaded into the express car. We think, therefore, there was no evidence to sustain the allegation that the defendant was guilty of negligence in starting the train when it did.

The plaintiff relies upon Ayers v. Boston & Maine R. R., 68 N. H. 208, 39 Atl. 1021; but in that case the plaintiff, assisted by others and the brakeman on the train, was loading cans of milk, and, when all but five cans had been loaded, the train was started without any signal from the brakeman and without any notice or warning to the plaintiff. The plaintiff then hurriedly took up three of the cans, walked along the platform opposite the car, and, in attempting to put them into it, was injured. The process of loading was interrupted by the sudden starting of the train, without any warning to the plaintiff, and an emergency was created which justified hurried action by the plaintiff, and there was evidence of negligence in starting the train while the loading of the cans of milk was in process.

In order to recover in the case under consideration, it was necessary to show in the first instance that there was negligence on the part of the railroad. As we do not think this was shown, there was error in denying the motion for a directed verdict.

[2] We think, also, if there had been any evidence which would justify a finding of negligence in the starting of the train, that, under the circumstances disclosed by the evidence, the negligence of the defendant had no causal connection with the injuries received by the deceased, but that they were sustained by him because of his own negligence. He was a man of mature years, and had been employed for three summers, at least, about that station, doing the work of loading and unloading baggage and express.

After it was discovered that the rear door of the express car was

closed, he and Mr. Aldrich waited upon the platform until the rear door of the baggage car was opposite them. Deceased then had a full view of the situation, and the danger must have been obvious to him. He undertook to do a dangerous thing, with a full realization of the whole situation, when he had time for reflection, and the injuries he received were solely the result of his own negligence.

The judgment of the District Court is reversed, the verdict set aside, and the case remanded to that court for further proceedings not inconsistent with this opinion.